IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,        *
f/u/b/o CUMMINS-WAGNER CO., INC.
                                                     *

      Plaintiff,
                                                     *

      v.                                               Civil Action No. RDB-13-00164
                                                     *

FIDELITY AND DEPOSIT COMPANY
OF MARYLAND,                              *

      Defendant.                        *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Cummins-Wagner Company, Inc. ("Plaintiff" or "Cummins-Wagner"), the use plaintiff, has brought this action under the Miller Act, 40 U.S.C. §§ 3131 *et seq.*, against Defendant Fidelity and Deposit Company of Maryland ("Defendant" or "F&D") seeking payment pursuant to a surety bond in connection with a construction project known as NIST[1] Building 318 ("the Project"). Essentially, Cummins-Wagner provided certain equipment and materials to TK Mechanical, Inc. ("TK"), a subcontractor on the Project, and TK allegedly has failed to pay its bill in full. Pending before this Court is the Motion of the Defendant F&D, the surety on the payment bond, to Dismiss Plaintiff's Complaint for failure to comply with the Miller Act's notice requirement. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendant Fidelity and Deposit Company of Maryland's Motion to Dismiss (ECF No. 5) is DENIED.

---

[1] NIST stands for the National Institute of Standards and Technology, located in Gaithersburg, Maryland.

BACKGROUND

In ruling on a motion to dismiss, this Court accepts as true the facts alleged in the plaintiff's' complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). According to the Complaint, Milestone Construction Services, Inc. ("Milestone") entered into a contract with the United States Government on July 21, 2010 to "furnish the materials and perform the labor for renovations and construction at Building 318, National Institute[] of Standards and Technology [("NIST")] in Gaithersburg, Maryland" ("the Project"). Pl.'s Compl. ¶ 5, ECF No. 1. As the contracted amount exceeded $100,000, on September 9, 2010, Milestone "executed and delivered to the United States a payment bond," with Defendant Fidelity and Deposit Company of Maryland ("Defendant" or "F&D") acting as surety, to protect subcontractors and others supplying labor and/or materials to the Project pursuant to 40 U.S.C. § 3131(b). *Id.* ¶ 6. Subsequently, Milestone "entered into a subcontract with TK Mechanical, Inc. ("TK"), whereby TK was to perform certain mechanical work on the Project." *Id.* ¶ 7. In connection with that subcontract, TK and Cummins-Wagner entered into a series of purchase orders, "whereby [Cummins-Wagner] agreed to furnish certain equipment and materials . . . for the Project including, but not limited to, pumps, water heaters, dryers, filters, belts, etc." *Id.* ¶ 8. According to Cummins-Wagner, "it also agreed to provide operation and maintenance manuals and start-up services for the equipment and materials supplied to TK." *Id.* Cummins-Wagner alleges that in exchange for these equipment, manuals and services, TK agreed to pay the total amount of $47,883.09. *Id.* ¶ 9.

In accordance with the purchase orders, Cummins-Wagner claims that it provided all

the equipment and materials ordered to TK for the Project and submitted invoices in the amount of $47,883.09. *Id.* ¶¶ 10-11. TK then allegedly made a partial payment of $21,205 leaving a balance of $26,678.09. *Id.* ¶ 12. The Complaint then alleges that Cummins-Wagner delivered the last equipment ordered by TK to the project on January 17, 2012. *Id.* ¶ 13. However, Cummins-Wagner claims that as of that date it had not yet provided the maintenance manuals or start-up services to TK. *Id.* At some point thereafter, TK abandoned the Project before completing its subcontract with Milestone and allegedly filed for bankruptcy. Def.'s Mem. in Supp. of Mot. to Dismiss at 2, ECF No. 5-1. As a result, on March 23, 2012, Milestone contacted Cummins-Wagner and requested information concerning the balances owed by TK to Cummins-Wagner. Pl.'s Compl. ¶ 14. The same day, Cummins-Wagner sent an email response to Milestone indicating that $26,678.09 was the remaining unpaid balance. Pl.'s Compl., Ex. C, ECF No. 1-3. Cummins-Wagner alleges that it then provided copies of open invoices to Milestone on March 27, 2012. Pl.'s Compl. ¶ 14; Pl.'s Compl., Ex. C. Additionally, Cummins-Wagner alleges that at that time it still had not performed all of its obligations under the purchase orders with TK and that it had had no notice that TK was no longer working on the Project. *Id.* ¶ 15.

On May 17 and May 18, 2012, Milestone allegedly contacted Cummins-Wagner to request equipment and materials for the completion of an air compressor and water heater as well as solar tanks and glycol to complete the installation of a solar water heater. *Id.* ¶¶ 16-17. Milestone then allegedly notified Cummins-Wagner on June 27, 2012 that it was "relieved of its responsibility to provide additional parts, start-up service and the operation and maintenance manuals for the project." *Id.* ¶ 18.

Finally, on July 2, 2012, Cummins-Wagner sent a letter to Milestone and F&D requesting payment for the outstanding balance of $26,678.09. *Id.* ¶ 19. Subsequently, Cummins-Wagner provided additional materials to F&D at F&D's request, but F&D ultimately denied the claim against the performance bond on December 14, 2012. *Id.* ¶¶ 20-24. As a result, Cummins-Wagner brought the presently pending action against Defendant F&D under the Miller Act, 40 U.S.C. §§ 3131 *et seq.*, seeking to recover the outstanding balance of $26,678.09. *Id.* ¶ 25.

STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are

4

not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Id.* at 679. Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Although the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)). In short, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 664.

## ANALYSIS

Defendant Fidelity and Deposit Company of Maryland ("Defendant" or "F&D") contends that the Complaint in this case should be dismissed as the use plaintiff, Cummins-Wagner Company, Inc. ("Plaintiff" or "Cummins-Wagner"), failed to comply with the ninety-day notice requirement of the Miller Act. Under the Miller Act,

> A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the

5

date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made.

42 U.S.C. § 3133(b)(2). The United States Court of Appeals for the Fourth Circuit has strictly construed the ninety-day limitation notice provision and held that it is "a condition precedent to the right to maintain suit on a payment bond." *Pepper Burns Insulation, Inc. v. Artco Corp.*, 970 F.2d 1340, 1342 (4th Cir. 1992).

Here, Cummins-Wagner has made a claim for outstanding payments due under three invoices totaling $26,678.09 originally issued to TK. The sole contention in F&D's Motion to Dismiss is that Cummins-Wagner failed to provide timely notice directly to it as the surety. Taking all inferences in the complaint in the light most favorable to the Plaintiff, Cummins-Wagner has sufficiently alleged that it provided adequate notice of its claim. Specifically, the alleged notice occurred within 90 days of the delivery of equipment; it was delivered to the required party; it was delivered by permissible means; and it contained all of the necessary elements required by statute.

## Applicability of the Notice Requirement

As a preliminary matter, this Court notes that the facts, as alleged by Cummins-Wagner, require the application of the Miller Act's notice to Cummins-Wagner's claim. Milestone Construction Services, Inc. ("Milestone") is the general contractor responsible for the renovations and construction at Building 318, National Institute of Standards and Technology ("the Project"). Pl.'s Compl. ¶ 5. Milestone and Defendant F&D, acting as a surety, executed a bond for the Project. *Id.* ¶ 6. While there was a contractual relationship between TK Mechanical, Ltd. ("TK") and Milestone, there was no contractual relationship between Milestone and Cummins-Wagner. *See id.* ¶ 6. Accordingly, Cummins-Wagner is a

6

second-tier subcontractor subject to the notice requirement of the Miller Act. *See* 40 U.S.C. § 3133(b)(2) (requiring notice within 90 days when claimant has a "direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor").

## The Timing of Cummins-Wagner's Notice to Milestone

In its Memorandum in Support of its Motion to Dismiss, F&D argues that Cummins-Wagner failed to provide timely notice. As F&D points out, the Complaint alleges that the last equipment ordered by TK pursuant to these invoices was delivered on January 17, 2012. Pl.'s Compl. ¶ 13. Accordingly, F&D asserts that the 90-day clock began to run on that date, and that the letter sent to Milestone and F&D on July 2, 2012 was therefore untimely.

F&D's position, however, ignores the allegation that Milestone received notice of the outstanding balances in March of 2012—well within the 90-day limit. Specifically, on March 23, 2012, Milestone contacted Cummins-Wagner and requested information concerning the balances owed by TK to Cummins-Wagner. *Id.* ¶ 14. The same day, Cummins-Wagner sent an email response to Milestone indicating that the remaining unpaid balance was $26,678.00. *Id.*; Pl.'s Compl. Ex. C. Cummins-Wagner also provided copies of open invoices to Milestone on March 27, 2012. Pl.'s Compl. ¶ 14; Pl.'s Compl. Ex. C. Thus, provided these communications satisfy the other requirements of the Miller Act, Cummins-Wagner provided notice to Milestone within the 90-day period.

## The Required Recipients of Miller Act Notice

The Miller Act merely requires that a second-tier subcontractor notify the primary contractor—not the surety. *See* § 3133(b)(2) (requiring "written notice *to the contractor* within

7

90 days" (emphasis added)); *see also Continental Casualty Co. v. U.S. f/u/b/o Robertson Lumber Co.*, 305 F.2d 794, 797 (8th Cir. 1962) ("Where the supplier deals with a sub-contractor, he is required to give notice to the prime if he expects to recover against the prime and the latter's surety, but in no event is a [M]iller Act supplier required to give notice to the surety before commencing suit or, in any event, to give notice to more than one person or entity."); *United States ex rel. Korosh v. Otis Williams & Co.*, 30 F. Supp. 590, 593 (D.Idaho 1939) ("The 90 day notice required to be given by the Statute applies to the contractor and not to the surety whose liability is co-extensive with the original contractor.").

As such, Cummins-Wagner was under no obligation to provide notice to F&D within the 90-day period. Notice to Milestone was sufficient for the purposes of the Miller Act.

### The Method of Notice

While the Miller Act contains specific provisions regarding the manner and method of providing notice, *see* § 3133(b)(2)(A)-(B), courts have repeatedly held that notice is sufficient when the contractor has actual notice. *See Fleisher Engineering & Construction Co. v. U.S. f/u/b/o Hallenbeck*, 311 U.S. 15, 19 (1940) ("We think the purpose of this provision as to manner of service was to assure receipt of the notice, not to make the described method mandatory so as to deny right of suit when the required written notice within the specified time had actually been given and received."); *Maccaferri Gabions, Inc. v. Dynateria Inc.*, 91 F.3d 1431, 1437 (11th Cir. 1996) (noting that "courts have been somewhat lenient about enforcing the Act's requirements concerning the *method* by which such notice is given").

Here, the Complaint sufficiently alleges that Milestone had actual notice, thereby satisfying the requirements for the method of notice under the Miller Act. Specifically,

8

Cummings-Wagner alleges that, at Milestone's request, Cummins-Wagner provided information about the amounts owed by TK. Pl.'s Compl. ¶ 14. Moreover, the email chain contained in Exhibit C of Cummins-Wagner's Complaint suggests that this information was, in fact, received and acknowledged. *See* Pl.'s Compl. Ex. C.

**The Content of the Notice**

The Miller Act expressly describes what the notice must contain: first, the notice must state with "substantial accuracy the amount claimed"; and second, the notice must include the "name of the party to whom the material was furnished or supplied." *See* § 3133(b)(2); *see also U.S. f/u/b/o S&G Excavating Inc. v. The Seaboard Surety Co.*, 236 F.3d 883, 884 (7th Cir. 2001). Additionally, several Circuits have proscribed a further requirement that the notice include a specific demand for payment. *See S&G Excavating*, 236 F.3d at 884-85 (discussing the disagreement among the Circuits). The U.S. Court of Appeals for the Fourth Circuit has yet to definitively address the issue, but Judge Blake of this Court has previously characterized the rule as requiring the notice to "alert the prime contractor that it is being looked to for payment or that a claim against its bond will be pursued." *United States f/u/b Arica Consulting & Contracting, Inc. v. Great American Ins. Co.*, 2006 U.S. Dist. LEXIS 81859, at *11 (D.Md. Nov. 9, 2006).[2]

Here, the Complaint contains sufficient facts to plausibly allege that the content of the notice was sufficient. First, the Complaint and incorporated Exhibits allege that the March 2012 communications both (1) established the amount owed as $26,678.09 and (2)

---

[2] Several Circuit Courts have expressly rejected the requirement of an explicit demand for payment. *See, e.g, S&G Excavating*, 236 F.3d at 884 (holding that Miller Act notice need not include an explicit demand for payment because, *inter alia*, "a demand to act in a particular way is not part of the ordinary meaning of 'notice'"); *see also McWaters & Bartlett v. U.S. f/u/b/o Wilson*, 272 F.2d 291, 295 (10th Cir. 1959) ("The statute does not require a demand for payment. It requires only written notice of the claim.").

9

identified TK as the party to whom the supplies were provided. *See* Pl.'s Compl. ¶ 14; Pl.'s Compl. Ex. C.[3] In addition, it is plausible that Milestone was aware that they were being looked to for payment, as indicated by Milestone's acknowledgement that they were "trying to cover all of TK's suppliers as well as [them]selves." *Id.*

Under these circumstances, the denial of F&D's Motion to Dismiss best conforms to the two purposes of the Miller Act. First, it complies with the basic purpose of the notice requirement itself, which aims to protect general contractors from liability that is temporally unlimited. *See Noland Co. v. Allied Contractors, Inc.*, 273 F.2d 917, 920-21 (4th Cir. 1959) (identifying the purpose of the notice provisions and labeling them as a "minor" purpose). Here, Milestone is alleged to have actual notice of the balance and to have acknowledged its potential liability for the amount; accordingly, the potential for unlimited future liability is not a concern. Second, denying F&D's Motion to Dismiss conforms with the "main purpose" of the Act, which is to protect those who provide materials and labor to government projects. *See Noland Co. v. Allied Contractors, Inc.*, 273 F.2d 917, 920-21 (4th Cir. 1959) (describing purposes of Act and noting protection of laborers and suppliers as the "main purpose").

## CONCLUSION

Accordingly, Cummins-Wagner has alleged actual notice to Milestone that is timely, appropriate in method, and sufficient in content. For this reason, Defendant Fidelity and

---

[3] Specifically, Exhibit C includes purported emails between with the subject line "TK Mechanical – NIST 301, 318 and 202" and demonstrating the outstanding balance on the NIST 318 Project as $26,678.09. Additionally, the attached invoices total $26,678.09 and list TK under both the "Ship to" and "Bill to" portions of the invoice.

10

Deposit Company of Maryland's Motion to Dismiss (ECF No. 5) is DENIED.

A separate Order follows.

Dated: September 9, 2013

_____/s/_____
Richard D. Bennett
United States District Judge